UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cr-60018-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,
v.

DYNZA CORNELIUS MACKEY,

    Defendant.
_____/

**ORDER ON MOTION FOR HOME CONFINEMENT/REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582**

**THIS CAUSE** is before the Court upon Defendant Dynza Cornelius Mackey's Motion for Home Confinement/Reduction of Sentence Pursuant to 18 U.S.C. § 3582, ECF No. [36] ("Motion"). The Government filed its Response, ECF No. [39], to which Defendant filed a Reply, ECF No. [42]. The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

**I.**    **BACKGROUND**

On April 16, 2019, Defendant pleaded guilty to aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), and unlawful transfer, possession and use of a means of identification, in violation of 18 U.S.C. § 1028(a)(7). *See* ECF No. [18]; Plea Agreement, ECF No. [21]. On July 30, 2019, Defendant was sentenced to a term of imprisonment of 61 months, followed by 3 years of supervised release. *See* ECF No. [34]. Defendant is currently housed at D. Ray James Correctional Facility, a privately operated prison in Folkston, Georgia under contract with the Bureau of Prisons ("BOP").

Defendant requests home confinement, a sentence reduction, or compassionate release due to unconstitutional conditions at the facility where he is incarcerated, and the ongoing COVID-19 health crisis, arguing that his underlying medical conditions, including prediabetes, high cholesterol, positive for hepatitis A, and a family history of cancer, put him at an increased risk of contracting the virus. *See* Mot. at 2-3. Indeed, Defendant asserts that he tested positive for COVID-19 on August 20, 2020. *See* Rep. at 3.

The Government opposes Defendant's Motion, arguing that the Court has no authority to place Defendant in home confinement, and that Defendant has failed to exhaust his administrative remedies, as he did not request compassionate release from the warden. The Government also contends that Defendant has not established "extraordinary and compelling" circumstances to justify a sentence reduction as his medical conditions are not risk factors according to the CDC, and the existence of the COVID-19 pandemic alone is insufficient to justify release. Finally, the Government argues that Defendant fails to demonstrate that compassionate release would be warranted under the section 3553(a) factors.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with almost 9,105,230 confirmed cases and nearly 230,000 reported deaths as of November 1, 2020.[1] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Nov. 1, 2020).

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the BOP to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II. DISCUSSION

### A. Home Confinement

Defendant expressly requested home confinement in his administrative request, and renews his request in the Motion. The Court agrees with the Government that it lacks authority to grant this relief. Once a sentence is imposed, the BOP designates the prisoner's place of imprisonment. *See* 18 U.S.C. § 3621(b). Section 3624(c)(2), Title 18 United States Code, addresses the BOP's home confinement authority:

> Home confinement authority.—The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

18 U.S.C. § 3624(c)(2).

Moreover, the CARES Act expanded the BOP's authority under § 3624(c)(2):

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act § 12003(b)(2). "The Attorney General made those findings on April 3, 2020, conferring on the BOP the authority to expand its use of house confinement." *United States v. Phillips*, No. 6:16-CR-198-Orl-28GJK, 2020 WL 2219855, at *1 (M.D. Fla. May 7, 2020) (footnote omitted).

Based on the clear statutory language of 18 U.S.C. § 3624(c)(2) and § 12003(b)(2) of the CARES Act, this Court has no authority to grant Defendant's request for placement in home confinement. Rather, § 3624(c)(2) grants the BOP with the exclusive authority to determine an inmate's place of confinement. "The CARES Act did not remove the exclusive authority of the

BOP to designate the place of an inmate's confinement. 'The Attorney General — and by delegation the BOP — has exclusive authority and *discretion* to designate the place of an inmate's confinement.'" *Phillips*, 2020 WL 2219855, at *1 (quoting *Burg v. Nicklin*, No. EP-19-CV-24-FM, 2019 WL 369153, at *3 (W.D. Tex. Jan. 29, 2019)) (emphasis in original); *see also United States v. Daniels*, No. 4:08-CR-0464-SLB, 2020 WL 1938973, at *1 (N.D. Ala. Apr. 22, 2020) ("The BOP designates the place of defendant's imprisonment. The Court does not have authority to dictate placements to the BOP. While the CARES Act gives the BOP broad discretion to ***expand*** the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision.") (citing 18 U.S.C. § 3621(b)) (emphasis in original); *United States v. Cosby*, 180 F. App'x 13, 13 (10th Cir. 2006); *United States v. Engleson*, No. 13-CR-340-3(RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (while the court can make a recommendation, the BOP retains the ultimate decision of whether to release an inmate to home confinement) (quoting *United States v. Read-Forbes*, 454 F. Supp. 3d 1113, 1118 (D. Kan. 2020)).

> It is important to understand that a request for home confinement under the CARES Act is different than a reduction-in-sentence (RIS) request based upon compassionate release. The BOP is utilizing its authority under 18 U.S.C. [§ 3624(c)(2)] . . . — not the compassionate release provision of 18 U.S.C. § 3582(c) — to effectuate the Attorney General's directive to the BOP regarding home confinement in connection with the CARES Act. [This statute does] not authorize a federal court to order the BOP to release a prisoner. *See United States v. Calderon*, No. 19-11445, 2020 WL 883084, at *1 (11th Cir. Feb. 24, 2020) (explaining that under § 60541(g)(1)(A) the Attorney General "may" release eligible elderly offenders, and district court was without jurisdiction to grant relief); *see also United States v. Lovelace*, No. 12-402, 2014 WL 4446176, at *2 (N.D. Ga. Sept. [9,] 2014) ("[T]he Court has no authority to grant Defendant's request and order the Bureau of Prisons to release Defendant to a halfway house." (citing 18 U.S.C. §§ 3621(b) & (b)(5))).

*United States v. Collins*, No. CR 616-014, 2020 WL 2529487, at *1 (S.D. Ga. May 18, 2020) (footnote omitted); *United States v. Smith*, No. 8:17-CR-412-T-36AAS, 2020 WL 2512883, at *3 (M.D. Fla. May 15, 2020) ("[U]nder the CARES Act, the determination of whether inmates qualify

for home confinement rests with the BOP Director, and the Court lacks authority to direct the BOP to release the defendant to home confinement[.]" (citing *United States v. Robles*, CR 3:17-343, 2020 WL 2306847, at *5 (M.D. Pa. May 8, 2020))).

Indeed, the CARES Act "has nothing to say about the district court's authority to order home confinement during the covered emergency period." *Daniels*, 2020 WL 1938973, at *2. Instead, "under the CARES Act, the BOP, through the Attorney General's delegation, retains the 'exclusive authority and sole discretion to designate the place of an inmate's confinement,' including home confinement." *Id.*; *see also de Jesus v. Woods*, No. 2:19-cv-121-WHA, 2019 WL 3326199, *4 (M.D. Ala. June 21, 2019) (BOP has the "exclusive authority and sole discretion" to place inmates in home confinement (quoting *Deffenbaugh v. Sullivan*, No. 5:19-HC-2049-FL, 2019 WL 1779573, *1 (E.D.N.C. Apr. 23, 2019))); *United States v. Campbell*, No. 3:12-CR-24 (CAR), 2014 WL 12911957, *1 (M.D. Ga. Sept. 17, 2014) ("Defendant's request to be placed on home confinement lies within the sole discretion of the BOP, and any order from this Court would merely be a recommendation to the BOP to consider placing Defendant in home confinement." (citing 18 U.S.C. § 3621(b))). Because the Court lacks authority to grant the requested relief under 18 U.S.C. § 3624(c)(2) and § 12003(b)(2) of the CARES Act, Defendant's request for home confinement must be denied.

### A. Compassionate Release

Defendant also requests a reduction in sentence. "Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a

motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief specifically under the compassionate release provision, § 3582(c)(1)(A), which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent

they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

    **i.   Exhaustion of Administrative Remedies**

Because Defendant's Motion fails on the first step of the § 3582 considerations, the Court need not address the remaining three inquiries under the § 3582 analysis. As the Government

correctly notes in its Response, Defendant has failed to establish that he exhausted his administrative remedies with the BOP. In fact, Defendant requested consideration for home confinement only, *see* Motion at 11, which request the Government represents has been denied because Defendant is ineligible due to his immigration status and violent criminal history, *see* Response at 3. Although there is substantial disagreement among federal courts across the nation on whether § 3582(c)(1)(A)'s exhaustion requirement can be waived in exceptional circumstances,[2] the Court declines to address the waiver issue under the facts of the instant case. "Even if some courts have recognized that waiver may be available . . . in exigent circumstances, no such case . . . has involved an inmate seeking compassionate relief without at least submitting a request . . . to the BOP prior to, or in conjunction with, his or her application to the court." *United States v. Vigna*, 455 S. Supp. 3d 68, 74-75 (S.D.N.Y. 2020).[3] For this reason alone, Defendant's Motion is due to be denied.

---

[2] *See United States v. Bess*, 455 F. Supp. 3d 53, 58 (W.D.N.Y. 2020) ("[T]here is widespread disagreement about whether any exceptions may apply. Some courts have found that they independently may excuse a defendant's failure to exhaust, while others have found that only the government may forfeit or waive the requirement."); *see also United States v. Cassidy*, No. 17-CR-116S, 2020 WL 1969303, at *5-6 (W.D.N.Y. Apr. 24, 2020) (collecting cases); *United States v. Otero*, No. 17CR879-JAH, 2020 WL 1912216, at *4 (S.D. Cal. Apr. 20, 2020) (collecting cases); *United States v. Wright*, No. 17 CR 695 (CM), 2020 WL 1922371, at *1 (S.D.N.Y. Apr. 20, 2020) (collecting cases); *United States v. Feiling*, 453 F. Supp. 3d 832, 838 (E.D. Va. 2020) (collecting cases); *United States v. Epstein*, No. CR 14-287 (FLW), 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020) (collecting cases); *United States v. Alam*, 453 F. Supp. 3d 1041, 1044 (E.D. Mich. 2020) (collecting cases); *United States v. Woodson*, 452 F. Supp. 3d 31, 35 (S.D.N.Y. 2020) (collecting cases).

[3] Indeed, courts across the country have repeatedly denied motions for compassionate release where the defendant has failed to also submit a request to the BOP. *See United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *1 (M.D. Fla. Apr. 24, 2020); *United States v. Daniels*, No. 4:08-CR-0464-SLB, 2020 WL 1938973, at *3 (N.D. Ala. Apr. 22, 2020); *United States v. Hays*, No. CR 18-00088-KD-N, 2020 WL 1698778, at *1 (S.D. Ala. Apr. 7, 2020) ("Hays did not provide the Court with any evidence that she exhausted her administrative remedies with the BOP or that she made a request for compassionate release to the Warden before she filed her motion in this Court. Since Hays failed to comply with either of the two statutory requirements, the Court finds that she has not met the necessary prerequisites for consideration of her motion."); *United States v. Zywotko*, ---F. Supp. 3d ----, 2020 WL 1492900, at *1-2 (M.D. Fla. Mar. 27, 2020); *United States v. Solis*, No. 16-015, 2019 WL 2518452, at *2 (S.D. Ala. June 18, 2019) (a defendant who has not "requested compassionate release from the BOP or otherwise exhausted

### ii. Extraordinary and Compelling Circumstances

Nevertheless, even if Defendant had satisfied the exhaustion requirement, he has failed to demonstrate that extraordinary and compelling circumstances exist. CDC guidance indicates that adults of any age with the following health conditions are at increased risk of severe illness due to COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, heart conditions, such as heart failure, coronary artery disease, and cardiomyopathies, immunocompromised from solid organ transplant, obesity, severe obesity, sickle cell disease, smoking, and type 2 diabetes.[4] Further, CDC guidance indicates that adults of any age with the following conditions might be at an increased risk for severe illness: asthma (moderate-to-severe), cerebrovascular disease, cystic fibrosis, hypertension or high blood pressure, immunocompromised state from blood or bone marrow transplant, immune deficiencies of HIV, use of corticosteroids, or used of other immune weakening medicines, neurologic conditions such

---

his administrative remedies" is not entitled to a reduction of his term of imprisonment.); *United States v. Bonventre*, No. 10-CR-228-LTS, 2020 WL 1862638, at *3 (S.D.N.Y. Apr. 14, 2020) ("Here, the relief Mr. Bonventre seeks affords no respect whatsoever for the administrative process. He does not ask the Court to direct the BOP to reopen his claims (his claims were never opened). Instead, he asks the Court to bypass the administrative process and decide the merits of a claim that Congress clearly intended should start, in the first instance, with the BOP. Therefore, the Court concludes that Bowen does not support Defendant's argument that his failure to exhaust should be excused based on the COVID-19 crisis alone."); *United States v. Engleson*, No. 13-CR-340-3 (RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) ("Defendant has not, to the Court's knowledge, made a request to the warden of his facility to bring such a motion. Accordingly, the statutory requirement is not met, and the Court may not grant relief under this provision."); *Woodson*, 452 F. Supp. 3d at 34-35 (concluding that because § 3582(c)(1)(A)'s requirement is statutory, not judicial, district courts may not "waive" exhaustion in the present context); *United States v. Carver*, 451 F. Supp. 3d 1198, 1199 (E.D. Wash. 2020) ("The administrative exhaustion requirement admits of no exception. Defendant fails to indicate whether she has sought relief from the Bureau of Prisons, much less shown she has satisfied the statute's exhaustion requirement. Nor does Defendant identify an alternative basis on which the Court could grant early release." (citation omitted) (footnote omitted)).

[4] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 16, 2020).

as dementia, liver disease, overweight, pregnancy, pulmonary fibrosis, thalassemia, and type 1 diabetes.[5]

Defendant asserts that he is pre-diabetic, positive for hepatitis A, and has high cholesterol, with a family history of cancer. *See* Mot. at 3. These conditions, however, do not place him at higher risk per CDC guidelines.[6] In addition, even though Defendant represents that he tested positive for COVID-19 between the filing of his Motion and his Reply—specifically on August 20, 2020—he has not alleged that he is suffering any symptoms, has required hospitalization, or has otherwise experienced any negative impacts as a result; nor has he provided any evidence or argument that his health is deteriorating. *See* Rep. at 3, 6. Defendant has also failed to allege that any of his present alleged ailments are terminal or that they substantially diminish his ability to provide self-care within the correctional facility environment.[7]

Additionally, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.")); *see also United States v. Kelly*, No. 2:03-cr-126-FtM-29, 2020 WL 2039726, at *1 (M.D. Fla. Apr. 28,

---

[5] *Id*.

[6] As the Government points out, Defendant is not pre-diabetic according to the laboratory results submitted by Defendant in support of his Motion. *See* Motion at 41 (showing hemoglobin A1c result of 5.6 and specifying that prediabetes falls within the range of 5.7-6.4).

[7] Currently, BOP is reporting that 0 inmates are positive, 3 inmates have died, and 194 inmates have recovered from COVID-19 at D. Ray James Correctional Facility. *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus (accessed November 2, 2020).

2020) (The "defendant does not allege any extraordinary or compelling circumstances to support compassionate release.").

As a result, Defendant fails to establish the existence of extraordinary and compelling circumstances in this case.

### iii. Section 3553(a) Factors

The Government maintains that Defendant's request is further unwarranted because the relevant section 3553(a) factors weigh against his release, citing a consistent pattern of domestic violence in his criminal history, and the fact that Defendant has completed barely a year of his 61-month sentence.[8] Defendant disagrees, asserting that he has not had a domestic violence or violent crime conviction in more than twenty years, and points to his lack of disciplinary history and participation in rehabilitative programming while in custody.

The applicable sentencing factors under § 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .
> . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Nonetheless, this does not end the Court's inquiry.

---

[8] The Government also points out that even if released, Defendant would be transferred into the custody of immigration authorities for deportation proceedings.

> Because a defendant's sentence reflects the sentencing judge's view of the [section] 3553(a) factors at the time of sentencing, the time remaining in that sentence may — along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates — inform whether immediate release would be consistent with those factors.

*United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020). As to whether Defendant poses a danger to the safety of the community, section 3142(g) sets forth the relevant factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g). "The factors listed in 3142(g) are largely duplicative of those in 3553(a)." *United States v. Martin*, No. CR 98-178, 2020 WL 3960433, at *6 (E.D. Pa. July 13, 2020) (quoting *United States v. Salvagno*, No. 02-51, 2020 WL 3410601, at *7 (N.D.N.Y. Apr. 23, 2020)).

The Court acknowledges at the outset that Defendant's underlying offense is serious. Further, at the time of sentencing, the Court concluded that a term of imprisonment of 61 months was an appropriate punishment for Defendant's conduct given the section 3553(a) considerations. *See* Judgment, ECF No. [34]. To date, Defendant has served a little over a year of his 61-month sentence, which amounts to less than 25% of his total sentence. Moreover, while Defendant asserts that he participated in substance abuse and welding courses, has had no disciplinary incidents, maintains good family relations, and has complied with his restitution obligations, the Court on

Case No. 19-cr-60018-BLOOM

balance finds that the applicable § 3553(a) factors do not weigh in favor of granting Defendant's Motion. According to the Presentence Investigation Report ("PSI"), Defendant was arrested for the offenses at issue in this case as a result of police responding to a domestic dispute, during which he and the mother of his child had an argument that resulted in visible bodily injuries to her. ECF 31 ¶¶ 11-12. In addition, Defendant has a lengthy criminal history, spanning thirty-four years, which includes multiple instances of physical violence. *Id*. 13-29. As such, Defendant fails to demonstrate that he would not pose a danger to the community.

## III.  CONCLUSION

Accordingly, the Court determines that Defendant has not satisfied any of the compassionate release considerations. It is therefore **ORDERED AND ADJUDGED** that the Motion, **ECF No. [36]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 2, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Dynza Cornelius Mackey, *pro se*
19578-104
D. Ray James Correctional Institution
Inmate Mail/Parcels
Post Office Box 2000
Folkston, GA 31537