**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-cv-61610-BLOOM**

DYNZA MACKEY,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Petitioner Dynza Mackey's ("Petitioner")
Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person
in Federal Custody. ECF No. [22] ("Amended Motion"). The Government filed a Response to the
Amended Motion, ECF No. [27] ("Response"), with supporting exhibits, ECF Nos. [27-1] & [27-
2]. Petitioner also submitted a Reply. ECF No. [30] ("Reply"). The Court has carefully considered
the Amended Motion, all opposing and supporting submissions, the record in this case, the
applicable law, and is otherwise fully advised. For the reasons set forth below, the Amended
Motion is denied in part and dismissed in part.

### I. BACKGROUND

Petitioner, who is presently incarcerated at the Federal Correctional Institution in
Manchester, Kentucky, asks the Court to vacate, set aside, or correct his sentence. *See generally*
ECF No. [22]. The Court construes Petitioner's Amended Motion liberally due to his *pro se* status.
*See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

***The Indictment***. The Indictment charged Petitioner with possession of device-making
equipment in violation of 18 U.S.C. § 1029(a)(4) (Count One); access device fraud in violation of

18 U.S.C. § 1029(a)(1) (Count Two); aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (Count Three); and unlawful transfer, possession, or use of a means of identification in violation of 18 U.S.C. § 1028(a)(7) (Count Four). CR-ECF No. [1] at 1-3.[1]

*Petitioner's Guilty Plea*. On April 16, 2019, Petitioner entered into a Plea Agreement with the Government. CR-ECF No. [21]. Petitioner agreed to plead guilty to aggravated identity theft (Count Three) and unlawful transfer, possession, or use of a means of identification (Count Four). *Id.* ¶ 1. In exchange, the Government agreed to seek dismissal of the possession of device-making equipment (Count One) and access device fraud (Count Two) charges after sentencing. *Id.* ¶ 2. All parties signed the Plea Agreement. *Id.* at 8.

In his Plea Agreement, Petitioner acknowledged that he understood his sentence would be imposed by the Court after consideration of the Sentencing Guidelines, which were advisory and not binding, and that the Court had the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses. *Id.* ¶¶ 3-4. Petitioner was aware that any estimate of the probable sentencing range or sentence that he could receive was a prediction, not a promise, and was not binding on the Court. *Id.* ¶ 10. Petitioner agreed that the established amount of actual, probable, or intended loss resulting from the charges was between $90,000.00 and $95,000.00, that the offense involved ten or more victims and the possession or use of device-making equipment, and that the Government and Petitioner were jointly recommending that the Court impose a five-year sentence of imprisonment. *Id.* ¶¶ 8-9. Petitioner also acknowledged that, due to his status as a non-citizen immigrant, removal from the United States was "presumptively mandatory" for pleading guilty to a crime of fraud involving approximately $90,000.00. *Id.* ¶ 18.

At Petitioner's change-of-plea hearing, the Court engaged in a thorough plea colloquy with

---

[1] References to docket entries in Petitioner's criminal case, No. 19-cr-60018, are denoted as "CR-ECF No."

Petitioner. *See* ECF No. [27-1]. The Court went over the elements of the offenses, *id.* at 5-8; reviewed the written Plea Agreement with Petitioner, *id. at* 5-14; identified all the constitutional rights Petitioner waived, *id.* at 11-14; ascertained acknowledgment from Petitioner of the Factual Proffer's accuracy, *id.* at 20; described the immigration consequences of a guilty plea, *see id.* at 10; explained the sentencing process, *id.* at 10-11, 23-24; established that trial counsel reviewed with Petitioner the elements of the offenses, discovery received from the Government prior to the change-of-plea hearing, and the Sentencing Guidelines, *id.* at 10, 15-16; and received confirmation that Petitioner was satisfied with the representation trial counsel had provided, *id.* at 4.

The Court verified that Petitioner was not under the influence of drugs or alcohol at the time of his plea colloquy. *Id.* at 3-4. Petitioner's trial counsel stated she and her co-counsel had reviewed the charges and the evidence produced during discovery, and that she had discussed with Petitioner the possible defenses and advantages of going to trial versus pleading guilty. *Id.* at 14-15. Petitioner denied any coercion and denied he had been promised anything not stated in the Plea Agreement. *Id.* at 5-8.

Petitioner also signed a Factual Proffer attesting to the underlying facts of his guilty plea. *See* CR-ECF No. [20]. The Factual Proffer summarized the following relevant facts:

> On October 26, 2015, officers with the Coral Springs Police Department were dispatched to [Petitioner's] residence in Coral Springs related to a domestic violence call. When officers arrived, they spoke with [Petitioner] and did a sweep of the residence to look for his girlfriend. During the sweep, officers saw what they believed was evidence of access device fraud. Officers observed injuries on his girlfriend, and so arrested [Petitioner] on domestic violence charges.

> After [Petitioner's] arrest, his girlfriend advised officers that [Petitioner] is involved in both credit card fraud and filing fraudulent tax returns. Based on what officers saw, and his girlfriend's statement, detectives obtained a search warrant for [Petitioner's] residence. During the execution of the search warrant, detectives located 3 card printers/encoders (HDP5000 ID Card Printer and Encoder; Evolis Pebble 3 ID Card Printer; and Datacard CP60 Plus Dye Sub/Thermal Duplex Color ID Card/Badge Printer); a counterfeit Florida driver['s] license[] in the name of a victim, but with [Petitioner's] picture; white card stock; several IRS "Acceptance

Letters" addressed to different people advising "[w]e are pleased to inform you that you have been accepted as an Authorized IRS e-file Provider in IRS e-file[];" counterfeit credit cards (less than 15) encoded with Chase Bank account numbers; and other items indicative of a counterfeit document/counterfeit credit card lab.

Additionally, the residence was rented in the name of an individual who advised that he did not know [Petitioner] and did not authorize anyone to use his information.

On October 5, 2018, an officer saw [Petitioner] while on routine patrol at the Seminole Hollywood Hard Rock [H]otel and Casino in Hollywood, in Broward County. The officer knew [Petitioner] because he was a suspect in a prior case. The officer knew that [Petitioner] had a warrant for violation of probation for criminal use of PII. The officer approached [Petitioner] and asked to see his driver's license. [Petitioner] ran, the officer chased him, deployed his taser on [Petitioner], and then arrested him. The officer arrested [Petitioner] for resisting without violence on the probation violation warrant and for possession of counterfeit Florida driver['s] licenses.

Among other items, [Petitioner] possessed [a driver's] license in the name of G.W.; and 4 debit cards and 2 credit cards in the name of G.W. The [driver's] license in the name of G.W. was genuine, and had been replaced in July 2018.

In an attempt to contact G.W., detectives called a number associated with him in public databases. When the detective called the number, a cell phone that had been seized from [Petitioner] rang. Interview and records check show that G.W. died in February 2016 and is [Petitioner's] uncle.

One of the credit cards that [Petitioner] possessed in the name of G.W. was a Capital One credit card ending 9511. It was opened in September 2018, which is over 2 years after G.W.'s death. Capital One mailed the credit card to [Petitioner's] residential address. There is surveillance video showing [Petitioner] using the card at WalMart on October 4; at a Publix on September 25 and October 2; at Seminole Hotel and Casino on October 3 and October 4; and at an ABC Wine and Spirit store on September 22, 2018. [Petitioner] also attempted other charges, which were declined.

Detectives obtained [Petitioner's] jail calls from Broward Jail. In an October 7, 2018 jail call, a female named "Alexis" advised [Petitioner] in coded language that the Capital One Card, referred to in the call as "C1," was cut off because Capital One needed to confirm transactions. [Petitioner] advised the female to have a male call to confirm the transactions to keep the card active. On October 29, 2018, a female made a three way call to Capital One with [Petitioner] on the phone. [Petitioner] identified himself as G.W., provided G.W.'[s] social security number, and said that he lost hist wallet with the Capital One credit card and would like to have it replaced. The Capital One representative advised that he would need to speak with a second person, and [Petitioner] hung up the phone.

4

> [Petitioner] knew that G.W. [was] an actual person, who was then deceased. [Petitioner] possessed and used G.W.'s personal identification information, during and in relation to his use of a counterfeit credit card in the name of G.W. Capital One, the bank that issued the credit card in the name of G.W. does business interstate.

*Id.* at 1-3.

***Sentencing and Post-Sentencing Motions***. On July 29, 2019, Petitioner was sentenced to a total term of imprisonment of sixty-one months, comprised of twenty-four months for Count Three and thirty-seven months for Count Four to be served consecutively, followed by a three-year term of supervised release. ECF No. [27-2] at 28-30. Upon Petitioner's release, he was ordered to surrender to Immigration for removal proceedings. *Id.* at 30. Petitioner affirmed that he had no objection to the Court's findings of fact or the manner in which the sentence was pronounced. *Id.* at 31. The Court informed Petitioner that, to the extent his right to appeal had not been waived, he was required to file any Notice of Appeal within fourteen days of the entry of judgment. *Id.* Petitioner did not file an appeal.

On July 27, 2020, Petitioner filed a Motion for Home Confinement/Reduction of Sentence Pursuant to 18 U.S.C. § 3582. CR-ECF No. [36]. Petitioner sought a reduction of his sentence and an order of home confinement, arguing that he was "among the vulnerable population at a heightened risk of suffering consequences if infected with Covid-19." *Id.* at 8. On November 23, 2020, after full briefing, *see* CR-ECF Nos. [39] & [42], the Court denied the motion, finding that Petitioner had not satisfied any of the compassionate release considerations, *see* CR-ECF No. [43].

***The Amended Motion, Response, and Reply***. On July 28, 2020,[2] Petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.

---

[2] "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations and internal quotation marks omitted).

*See* ECF No. [1]. Petitioner was later ordered to submit an amended motion. *See* ECF No. [5]. On November 9, 2020, the date of the extended filing deadline, Petitioner delivered his Amended Motion to the prison mailing system. *See* ECF No. [22].[3] As such, the Amended Motion is the operative motion for the purposes of this Court's analysis. *See* ECF No. [5] at 4 (explaining that "the amended § 2255 motion [will] be the operative motion" in this case).

Liberally construing the Amended Motion, Petitioner raises two claims of ineffective assistance of counsel. The first claim appears to assert four subclaims. ECF No. [22] at 5-13. In his second claim, Petitioner raises an additional claim for ineffective assistance of counsel, along with a challenge to his conditions of confinement, which appear to relitigate Petitioner's previously denied compassionate release motion. *Id.* at 15-20; *see also* CR-ECF No. [36]. The Government filed a Response addressing each of Petitioner's claims and argues that the Amended Motion should be denied because the claims are not cognizable in a § 2255 motion. ECF No. [27]. Petitioner requested an extension of time to file a permissive reply to the Government's Response, *see* ECF No. [28], and, on February 9, 2021, Petitioner filed his Reply, *see* ECF No. [30]. The Court finds that good cause exists to allow Petitioner's untimely Reply.

## II. LEGAL STANDARD

***Section 2255 Motions***. Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments

---

[3] The Amended Motion was not filed until November 24, 2020. In the intervening days between the extended filing deadline and the Court's receipt of the Amended Motion, the Court entered an order dismissing the case without prejudice for failure to comply with the Court's orders. *See* ECF No. [21]. The case was re-opened upon receiving the Amended Motion and the Government was ordered to respond. *See* ECF No. [23].

under § 2255 are extremely limited. *See United States v. Frady*, 456 U.S. 152, 165 (1982). A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum sentence authorized by law; or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *see also McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011) (citation omitted). "[R]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).

*Ineffective Assistance of Counsel*. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 & 694 (1984); *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011). To satisfy the prejudice prong, a petitioner must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *see also Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). If a petitioner fails to establish one of the prongs under *Strickland*, the Court need not address the remaining prong. *See Strickland*, 466 U.S. at 697.

A petitioner bears the burden of proof in habeas proceedings. *See Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008). "'There is a strong presumption that counsel's performance was reasonable and adequate.' To overcome that presumption, 'a petitioner must establish that no competent counsel would have taken the action that his counsel did take.'" *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000)).

## III. DISCUSSION

The Court liberally construes the claims presented in the Amended Motion as ineffective assistance of counsel claims. The Amended Motion also challenges Petitioner's conditions of confinement and attempts to relitigate his compassionate release motion.

Petitioner filed several other documents that appear to either reply to the Government's Response or to raise new claims not previously raised in the Amended Motion. *See* ECF Nos. [29], [34], [35], [37], & [38].[4] To the extent that Petitioner intended to raise new claims in any of these subsequent filings, the Court finds that those claims are untimely and subject to dismissal. *See* ECF No. [5] at 6 ("The amended motion shall be the sole, operative pleading considered in this case, and only the claims listed therein will be addressed by the Court." (citing *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007))); *see also id.* ("[Petitioner] is cautioned that failure to comply with this order will result in dismissal, and that no further amendments will be permitted.").

The Court will address each of the claims raised in the Amended Motion in turn.

### A. Claim One

In Claim One, Petitioner raises four subclaims arguing that he received ineffective assistance of counsel. For purposes of clarity, the Court identifies the four subclaims as Subclaim A through Subclaim D. Two of the subclaims pertain to ineffective assistance rendered prior to

---

[4] This Court previously granted Petitioner's Motion to Withdraw Defendant's Claim of Breach of Promise as it Relates to Similar Involved Criminal Conduct of Counts 2 and 3. *See* ECF No. [39]; *see also* ECF No. [31]. However, these withdrawn claims have no impact on the Court's analysis of the issues raised in the Amended Motion. Indeed, the claims that Petitioner sought to withdraw were never timely presented in the Amended Motion; rather, they were improperly raised by Petitioner in numerous subsequent filings. *See, e.g.*, ECF No. [29] at 6-7; ECF No. [30] at 3-4, 6-7. As such, the Court's analysis is limited only to those claims that were timely raised in the Amended Motion. *See* ECF No. [5] at 3 ("The Court will only consider claims raised by the [petitioner] in his amended § 2255 motion.").

Petitioner's guilty plea (Subclaim A and Subclaim B), and the other two pertain to ineffective assistance rendered in conjunction with sentencing (Subclaim C and Subclaim D).

*Subclaim A*. Petitioner first argues that trial counsel was ineffective for failing to investigate a viable defense. ECF No. [22] at 9-11. Petitioner describes an affidavit that "confirms that an agent of the government did introduce evidence into the home of the defendant, which [was] ultimately seized during a search warrant execution and a detail [sic] search of the defendant's home beyond the scope of consent prior to requesting a search warrant." *Id.* at 9. Petitioner states that the affidavit was in the Government's possession for three years, but that it was finally "located" less than one week prior to his sentencing. *Id.* According to Petitioner, because trial counsel failed to investigate and locate the affidavit, trial counsel was uninformed when she negotiated Petitioner's plea with the Government, thus rendering Petitioner's guilty plea unknowing and involuntary. *Id.* at 10. Petitioner argues that trial counsel's failure to investigate the affidavit resulted in prejudice of an increased sentence of twenty-one to twenty-eight months. *Id.* at 10-11. Upon review, however, the Court finds that Petitioner's claim is without merit.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Machibroda v. United States*, 368 U.S. 487, 493 (1962)). "A defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all *nonjurisdictional* defects in that defendant's court proceedings." *United States v. Yunis,* 723 F.2d 795, 796 (11th Cir. 1984). "A valid guilty plea also renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." *Class v. United States*, 138 S. Ct. 798, 805 (2018); *see also Haring v. Prosise*, 462 U.S. 306, 320 (1983) ("[A]

guilty plea results in the defendant's loss of any meaningful opportunity he might otherwise have had to challenge the admissibility of evidence obtained in violation of the Fourth Amendment."). Thus, once a defendant enters a knowing and voluntary guilty plea, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *see also Stano v. Dugger*, 921 F.2d 1125, 1150 (11th Cir. 1991). This waiver "includes any claim of ineffective assistance of counsel unless the deficient performance relates to the voluntariness of the plea itself." *Bullard v. Warden, Jenkins Corr. Ctr.*, 610 F. App'x 821, 824 (11th Cir. 2015) (citations omitted).

Petitioner knowingly and voluntarily entered a plea of guilty in his criminal case. The plea colloquy reflects that, in accepting Petitioner's guilty plea, the Court complied with Federal Rule of Criminal Procedure 11 and specifically ensured that Petitioner "(1) enter[ed] his guilty plea free from coercion, (2) underst[ood] the nature of the charges, and (3) underst[ood] the consequences of his plea." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).

When evaluating post-guilty plea claims of ineffective assistance of counsel, statements made under oath during a plea colloquy are typically binding on a petitioner. "[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "Solemn declarations in open court carry a strong presumption of verity." *Id.* at 74; *see also United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." (citation omitted)).

Here, Petitioner stated during his plea colloquy that (1) no one had forced him in any way to plead guilty, *see* ECF No. [27-1] at 5; (2) no one had exerted any threats or force upon him to cause him to plead guilty, nor had anyone made any promises or other representations to him, *see*

*id*. at 5-7; (3) his trial counsel fully discussed the Plea Agreement and Factual Proffer with him, and Petitioner understood everything his counsel had explained about them, *see id.* at 14-16, 20-21; (4) Petitioner read the Plea Agreement and Factual Proffer before signing them, *see id.* at 4, 20; (5) the facts in the Factual Proffer were truthful, *see id.* at 20; and (6) Petitioner fully discussed the Indictment and the Government's evidence with trial counsel and was satisfied with their representation, *see id.* at 4, 14-16. He further acknowledged that he had a full discussion with his attorney regarding the elements of the offense and a full review of the discovery and did not have any questions regarding the discovery or any possible defenses. *Id*. Likewise, the Court found that Petitioner's guilty plea was knowing and voluntary. *Id.* at 23. "[Petitioner's] self-serving statements that he was misadvised by counsel or that his plea was otherwise not knowing or voluntary . . . is wholly conclusory with no support whatever in the record." *Fletcher v. Inch*, No. 17-cv-61733, 2019 WL 6619424, at *7 (S.D. Fla. Oct. 31, 2019) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 n.7 (1969)), *report and recommendation adopted sub nom. Fletcher v. Florida*, No. 17-cv-61733, 2019 WL 6608771 (S.D. Fla. Dec. 4, 2019). As such, Petitioner's unsubstantiated argument that trial counsel's failure to investigate the affidavit rendered his guilty plea unknowing and involuntary is plainly belied by the record. Therefore, Petitioner is bound by the representations made during his change of plea hearing regarding the knowing and voluntary nature of his guilty plea.

Moreover, this subclaim would fail even if it were not barred by Petitioner's guilty plea. As the Government advises, Petitioner never produced the alleged affidavit, nor did he provide any proof of its existence. *See* ECF No. [27] at 17.[5] Moreover, at the sentencing hearing,

---

[5] As noted above, "[i]t is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation." *Blankenship*, 542 F.3d at 1270-71 (citing *Jones v. Walker*, 540 F.3d 1277, 1291-93 (11th Cir. 2008) (en banc); *Romine v. Head*, 253 F.3d 1349, 1357 (11th

Petitioner's counsel explicitly acknowledged that she was aware of the affidavit, she had reviewed it with Petitioner, and that she did not intend to rely on it during the sentencing proceeding. *See* ECF No. [27-2] at 4-5. "There is a strong presumption that counsel's representation was reasonable," *Presnell v. Warden*, 975 F.3d 1199, 1228 (11th Cir. 2020) (citing *Stewart v. Sec'y, Dep't of Corr.*, 476 F.3d 1193, 1209 (11th Cir. 2007)), and the Court will not speculate as to the alleged unreasonableness of trial counsel's decision not to rely on the affidavit, especially where its existence remains in question.[6]

Additionally, it is worth noting that at his sentencing hearing, Petitioner raised the issue of whether the Government had failed to produce the affidavit during discovery, and argued that the affidavit supported imposing a sentence at the lower end of the guideline range. ECF No. [27-2] at 15-19. Nevertheless, before pronouncing the sentence, the Court addressed Petitioner's argument, stating, "while I note that you truly believed that there [were] some items that perhaps were not provided to you in discovery, the Court can certainly rely upon those facts that you did admit to and you did agree were truthful." *Id.* at 26. Specifically, the Court considered the

---

Cir. 2001)). "In other words, [the petitioner] has the burden of demonstrating counsel's performance was ineffective and must elicit the facts necessary to prove the claim." *Id.* at 1271.

[6] The United States Supreme Court has explained that

> [t]he principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, *see* [*Brady v. United States*, 397 U.S. 742, 751-52 (1970)], or by contesting all guilt, *see Santobello v. New York*, 404 U.S. 257 (1971).

*Tollett*, 411 U.S. at 267-68. Indeed, "[c]ounsel must be reasonable, not perfect or unrelenting. Effective counsel 'is not required to "pursue every path until it bears fruit or until all hope withers."'" *Presnell*, 975 F.3d at 1228-29 (quoting *Williams v. Head*, 185 F.3d 1223, 1237 (11th Cir. 1999)). Moreover, "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

following factual admissions in imposing a sentence: (1) the facts of the underlying criminal offenses involved a significant amount of fraud where Petitioner possessed large amounts of other individuals' personal identifying information, in addition to access device equipment; (2) Petitioner's fraudulent scheme was sophisticated in that he knew that the credit card accounts were opened after G.W.'s death and intentionally used these accounts in furtherance of his theft; (3) Petitioner was on probation for a similar offense of using the personal identifying information of others at the time he committed the offense at issue here; and (4) Petitioner has a lengthy criminal history, which includes numerous past offenses for fraudulently possessing and using the personal identifying information of others. *See Id.* at 25-27. Upon reviewing these facts and the totality of the circumstances, the Court determined that a total term of imprisonment of 61 months—a sentence that was at the high end of the advisory guidelines—was appropriate.

Ultimately, even assuming that counsel was deficient in failing to discover the affidavit, the Court fails to see how Petitioner was prejudiced by this purported ineffectiveness, especially where the Court found ample factual support for imposing a sentence within the advisory guidelines despite the missing affidavit. Tellingly, despite his own admissions and the significant, independent record evidence supporting the sentence imposed, Petitioner offers no explanation as to how he was prejudiced by trial counsel's allegedly deficient investigation.[7] As Petitioner cannot show prejudice, Subclaim A must be denied.

**Subclaim B**. Petitioner also argues that trial counsel was ineffective for failing to move for pretrial release or to reduce bond. ECF No. [22] at 7-8. Petitioner states that after his first

---

[7] *See Hill*, 474 U.S. at 59 ("[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.").

appearance, he directed his counsel to solicit a bond. *Id.* at 7. At Petitioner's second appearance, the Government produced an immigration detainer and "informed the defense that in the event the defendant posts bond he would have to resolve his detainer issues prior to being released." *Id.* at 8. Trial counsel therefore agreed to the Government's proposed $250,000.00 *Nebbia*[8] bond. *Id.* at 7-8. Petitioner contends that "[m]onths later the [C]ourt's probation officer/presentencing investigator . . . confirmed there was no detainer." *Id.* at 8. As such, Petitioner asserts that the failure to secure his pretrial release prevented him from aiding in his own defense. *Id.* at 7-9.

Upon review, however, the Court concludes that Petitioner's claim is not cognizable under § 2255. A federal prisoner may only obtain relief under § 2255 if his sentence (a) was imposed in violation of the Constitution or federal laws, (b) was imposed by a court without jurisdiction to do so, (c) was in excess of the maximum permitted by the law, or (d) is otherwise subject to attack. *See* 28 U.S.C. § 2255(a). A claim that counsel was ineffective for failing to secure Petitioner's pretrial release does not fall within any of these grounds for relief. *See Alexander v. United States,* No. 6:07-cv-736-Orl-19KRS, 2008 WL 2329411, at *6 (M.D. Fla. June 4, 2008) (denying the petitioner's ineffective assistance of counsel claim arising from his attorney's failure to honor his request for a bond hearing because the claim was not cognizable under § 2255 and because the petitioner could not establish any prejudice). Additionally, even if this subclaim were cognizable, as discussed above regarding Subclaim A, it is barred by Petitioner's valid guilty plea.

Further, the record contradicts Petitioner's claim that no immigration detainer existed. *See* CR-ECF No. [10] at 1 (Minute Order for Petitioner's Detention Hearing, which notes, under the disposition section, that "Defendant has immigration"); ECF No. [27-2] at 30 ("You must also comply with the following special conditions, and it will include the condition that you surrender

---

[8]  *United States v. Nebbia*, 357 F.2d 303 (2d Cir. 1966).

to Immigration for removal proceedings after you've served your term of imprisonment."); CR-ECF No. [34] at 4 (imposing a special condition of supervision in Petitioner's judgment in his criminal case that requires him to surrender to immigration officials for removal proceedings upon his release from custody). The minutes from the Detention Hearing on February 2, 2019, reflect that counsel "reserve[ed] the right to a [pretrial detention] hearing at a later date." CR-ECF No. [10] at 1. Petitioner has not asserted any facts that would reasonably suggest he was prejudiced by trial counsel's alleged waiver of a bond hearing. Therefore, even if this claim were cognizable under § 2255, Petitioner is not entitled to any relief. Accordingly, Subclaim B is denied.

**Subclaim C**. Petitioner claims that trial counsel rendered ineffective assistance at sentencing when she failed to object to the Presentence Investigation Report ("PSR") on the basis that it improperly included two of Petitioner's prior criminal offenses from 2007 in the computation of his criminal history category. ECF No. [22] at 5-7. Specifically, Petitioner argues that these offenses are time barred because, at the latest, he completed his sentences for the two convictions by April 14, 2008. Petitioner further argues that because the conduct underlying Count Four occurred in September 2018, more than ten years had elapsed since the completion of the two prior offenses. Petitioner contends that the inclusion of these prior time-barred offenses improperly enhanced his criminal history category, which in turn resulted in the imposition of a sentence in excess of the maximum authorized by law. Petitioner argues that trial counsel's failure to object was ineffective because it caused him to be subjected to an increased sentencing range. Petitioner's argument is without merit.

The United States Sentencing Guidelines provide that, "for each prior sentence of imprisonment of at least sixty days[,]" two points are added to the criminal history category. U.S. Sent'g Guidelines Manual § 4A1.1(b) (U.S. Sent'g Comm'n 2015). When calculating a defendant's criminal history points for prior sentences of less than one year and one month, "[a]ny

prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted." U.S. Sent'g Guidelines Manual § 4A1.2(e)(2) (U.S. Sent'g Comm'n 2018). The Commentary makes clear that "the term 'commencement of the instant offense' includes any relevant conduct." *Id.* cmt. n.8.

As calculated in the PSR, Petitioner had an offense level of 13 and a criminal history category of V. CR-ECF No. [31] ¶ 119.[9] At the sentencing hearing, Petitioner objected to the PSR's inclusion of four criminal history points for his two prior convictions that were completed in 2008. *See* ECF No. [27-2] at 19-21; *see also* CR-ECF No. [31] ¶¶ 67, 69. Following Petitioner's objection, the Court sought clarification from trial counsel, who conceded that the offenses "had not timed out because . . . the relevant conduct that's being taken into account in this offense began in 2015." ECF No. [27-2] at 21. No formal objection was lodged in the record. *See id.* at 22.

The PSR shows that, in January 2007, Petitioner was convicted of fraudulently possessing or using personal identification. CR-ECF No. [31] ¶ 67. Petitioner received twelve months of probation. *Id.* On April 14, 2008, Petitioner admitted to violating his probation and was sentenced to ninety days in jail. *Id.* On the same day, stemming from an intervening September 2007 arrest, Petitioner pled guilty to grand theft in the third degree and was sentenced to ninety days in jail to run concurrently with the sentence for fraudulently possessing or using personal identification. *Id.* ¶ 69. Both the Factual Proffer and the transcript of the change of plea hearing identify October 26, 2015 as the date on which the offenses at issue in this case commenced. CR-ECF No. [20] at 1; ECF No. [27-1] at 16. Petitioner signed the Factual Proffer and affirmed at the change of plea

---

[9] The Court notes that, on the record at sentencing, it mistakenly stated that Defendant had a criminal history category of *IV* and an offense level of 13, "resulting, as to Count [Four], in an advisory guideline range of [thirty] to [thirty-seven] months." ECF No. [27-2]. Consistent with the PSR and, according to the Federal Sentencing Guidelines sentencing table, the range for a level 13 offense with a category V criminal history is thirty to thirty-seven months. U.S. Sent'g Guidelines Manual ch. 5, pt. A (U.S. Sent'g Comm'n 2010) (sentencing table).

hearing that the facts set forth therein were correct. CR-ECF No. [20] at 3; ECF No. [27-1] at 20. Thus, Petitioner had two prior sentences of imprisonment that each exceeded sixty days imposed within ten years of the date of commencement of the charged offenses in this case. Accordingly, Petitioner has not shown that trial counsel erred in failing to object to the inclusion of the 2008 convictions in calculating Petitioner's criminal history score. Indeed, the Court would have overruled any objection on this basis. Therefore, trial counsel was not deficient for failing to object. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." (citation omitted)).

Furthermore, even if Petitioner had established deficient performance, he cannot show prejudice. Per the Plea Agreement, Petitioner agreed "that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by the law for the offense(s) identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed." CR-ECF No. [21] ¶ 3. The Court imposed a sentence of sixty-one months— which was less than the statutory maximum term of imprisonment of seven years and only one month greater than the parties' joint recommendation. Because his sentence was below the statutory maximum, Petitioner cannot show prejudice. Accordingly, Subclaim C is denied.

**Subclaim D**. Petitioner argues that trial counsel was ineffective for failing to object to the Government's Sentencing Memorandum, *see* CR-ECF No. [30], with mitigation regarding Petitioner's personal and familial history. ECF No. [22] at 12-13. Petitioner states he advised trial counsel of the details of his life that would counter the narrative set forth in the Government's Sentencing Memorandum. *Id.* at 12 (For example, "gainful employment for approximately twenty years . . . [,] charitable contributions to underprivileged children . . . [,] [and acting] as a single parent to 5 children[.]"). Petitioner's claim is without merit.

Prior to sentencing, trial counsel filed several written objections that were incorporated into the PSR. *See* CR-ECF No. [31-2] at 1-3 ("The defendant lodges general objections to the entire The Offense Conduct section of the PSR."; "The defendant objects to paragraphs 94, 95, 96, and 97 of the Personal and Family Data section of the PSR.."; "[T]he defendant indicated he and his siblings were primarily raised in Miami and Miami Springs not Coral Springs[,] . . . his mother walked away from her taxi business[,] . . . his mother did not work as a newspaper vendor; however, he informed he had [a] newspaper route when [he] was younger."; "The defendant objects to information contained in paragraph 99, in the Physical Condition section of the PSR. He informed that the scar on his right knee is from a surgical procedure performed in approximately 1986."; "The defendant objects to information contained in paragraph 104, in the Substance Abuse section of the PSR. He requested the PSR be amended to note that his prescription drug dependency arose from the knee surgery he had in 1986."). At sentencing, Petitioner agreed on the record that he reviewed the Government's Sentencing Memorandum and that he was ready to proceed with the sentencing hearing. ECF No. [27-2] at 4. Petitioner was then permitted to make a statement at sentencing regarding the hardships he endured throughout his life. *See id.* at 10-21. Following Petitioner's statement, trial counsel advocated that the Court should impose the five-year sentence recommended in the Plea Agreement, noting that "part of what we can take from [Petitioner's statement] is he, unfortunately, was the victim of and a witness to a significant amount of violence throughout his life, and especially as a very young child." *Id.* at 23.

The Court considered Petitioner's personal and familial mitigation before imposing the sentence. The Court specifically addressed Petitioner's statement, agreeing with Petitioner "that there was some trauma in [Petitioner's] early childhood that certainly would justify the Court requiring some type of mental health evaluation and treatment." *Id.* at 25. The Court then cited the "significant amount of fraud," as well as the fact that Petitioner was on probation for another

offense of using another individual's personal identifying information when he committed the offenses at issue here. *Id.* at 26. The Court ultimately imposed the sixty-one-month sentence after "consideration of [Petitioner's] statement, the joint recommendation of the parties, a consideration of the [PSR], which does contain the advisory guidelines, and a full consideration of the statutory factors of [18 U.S.C. § 3553(a)]." *Id.* at 28. Thus, the transcript of the sentencing hearing contradicts Petitioner's conclusory allegations that trial counsel failed to inform the Court of sentencing mitigation. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)). Accordingly, because the Court considered Petitioner's personal and familial mitigation at sentencing, Petitioner cannot demonstrate prejudice. Subclaim D is therefore denied.

## B.  Claim Two

The Court liberally construes Claim Two. Petitioner appears to raise the argument that trial counsel was ineffective for failing to argue for a downward departure at sentencing because Petitioner's immigration status would subject him to a more severe sentence in prison. ECF No. [22] at 15-20. Petitioner describes "substandard conditions and health care failings" he has experienced at the D. Ray James Correctional Facility. *Id.*[10] Petitioner also appears to relitigate the denial of his compassionate release motion in his criminal case. *See id.* at 18 ("[T]he defendant requested consideration for home confinement, which this Honorable Court denied . . . 'because Defendant is ineligible due to his immigration status.'"); *but see* CR-ECF No. [43] (denying Petitioner's Motion for Home Confinement/Reduction of Sentence Pursuant to 18 U.S.C. § 3582 where he failed to satisfy any of the compassionate release considerations). Petitioner admits "that

---

[10] At the time of filing the Amended Motion, Petitioner was confined to the D. Ray James Correctional Facility. ECF No. [22] at 1. He was later transferred to the Federal Correctional Institution in Manchester, Kentucky. ECF No. [36].

all these circumstances could not have been predicted." However, he also argues that if trial counsel had investigated she "would have known that [due to Petitioner's status as an immigrant he] would have been subjected to a rough sentence under more sever[e] circumstances than other prisoners serving sentences[.]" ECF No. [22] at 20.

To the extent that Claim Two raises an ineffective assistance of counsel claim, it is without merit and contradicted by the record. At sentencing, trial counsel *did* raise Petitioner's immigration status and the pending removal order as a "very serious additional consequence." ECF No. [27-2] at 23. Trial counsel also argued that, due to the pending removal order, Petitioner

> likely will not have the benefit of placement in a halfway house to serve out the end of his sentence, and he may be limited as to what programs are available to him while in the custody of the Bureau of Prisons, which is an additional consequence that a similarly situated person who is a United States citizen or had lawful immigration status would not be facing. So what we have is it essentially means he'll end up doing more time in custody and harder time than a different person who is similarly situated.

*Id.* The Court also noted these immigration consequences before imposing the sentence. *See id.* at 25 ("[A]nd I do appreciate the statements of [trial counsel] that certainly brings to bear that you will most likely be involved in an immigration proceeding.").

Petitioner's argument that his sentence of incarceration was more severe due to his immigration status is wholly conclusory and without merit. *See supra* Subclaim D (listing the factors the Court relied upon in its sentencing decision); *see also Wilson*, 962 F.2d at 998 ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)). As such, Claim Two is denied.

Insofar as Petitioner seeks to challenge the conditions of his confinement, those claims are not cognizable in a § 2255 motion. It is well established that "claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement 'fall outside of that core and may be brought pursuant to § 1983.'"

*Daker v. Warden,* 805 F. App'x 648, 650 (11th Cir. 2020) (quoting *Nelson v. Campbell*, 541 U.S. 637, 644 (2004)). Where a claim does not result in immediate release from custody, it does not "lie at the core of habeas corpus, and may be brought, if at all, under § 1983." *Id.* (quoting *Skinner v. Switzer*, 562 U.S. 521, 535 n.13 (2011) (internal quotation marks omitted)). A civil rights action, rather than a habeas corpus action, is the proper vehicle for raising a claim regarding the conditions of confinement. *See McKinnis v. Mosely*, 693 F.2d 1054, 1056-57 (11th Cir. 1982). Thus, Petitioner's conditions of confinement claim must be dismissed. *See Fernandez v. United States*, 941 F.2d 1488, 1494 (11th Cir. 1991) (finding § 2255 was inapplicable to prisoner's conditions of confinement claim).

Finally, regarding Petitioner's attempt to relitigate his compassionate release motion, the Court dismisses any such claim as it is not properly brought pursuant to a § 2255 motion.

## IV. EVIDENTIARY HEARING

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). Here, the issues presented can be resolved based on the record before the Court. Indeed, because the Court can "adequately assess [Petitioner's] claim[s] without further factual development[,]" Petitioner is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

## V. CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal; rather, in order to do so, they must

Case No. 20-cv-61610-BLOOM

obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where, as here, the district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Upon consideration of the record, the Court concludes that no certificate of appealability shall issue.

## VI. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner Dynza Mackey's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, **ECF No. [22]**, is **DENIED**.

2. Petitioner's claims regarding his conditions of confinement are **DISMISSED WITHOUT PREJUDICE**.

3. Petitioner's claims regarding his Motion for Home Confinement/Reduction of Sentence Pursuant to 18 U.S.C. § 3582 are **DISMISSED WITHOUT PREJUDICE**.

4. All remaining claims in the Amended Motion are **DENIED**.

5. No certificate of appealability shall issue.

Case No. 20-cv-61610-BLOOM

6.  To the extent not otherwise disposed of, any pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

7.  The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 21, 2021.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Dynza Mackey
#19578-104
Manchester Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 4000
Manchester, KY 40962